UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | Judge |
| vs. | ) | |
| | ) | |
| FUNDS IN THE AMOUNT OF $31,200 | ) | |
| IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant, *In Rem*. | ) | |

**VERIFIED COMPLAINT FOR FORFEITURE, *IN REM***

COMES NOW, before this honorable Court, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to the provisions of Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Fed. R. Civ. P. Supp.") G(2), respectfully, to bring this Verified Complaint for Forfeiture *In Rem*.

Plaintiff hereby alleges as follows:

**Nature of the Action**

1. This is a civil action brought to forfeit property seized by the United States government for violations of federal law that provide for the seizure, forfeiture, and disposal of certain property to the United States.

2. This action is an *in rem* legal proceeding against property, not against an individual, to determine rights in the property that are conclusive against the entire world.

3. This civil action *in rem* is brought to forfeit property pursuant to the provisions of 21 U.S.C. § 881(a)(6), 18 U.S.C. §§ 981(a)(1)(A), and 981(a)(1)(C), because it: (1) was involved in,

(2) was used or intended to be used to facilitate, (3) was furnished or intended to be furnished in exchange for, or (4) is proceeds (or property) traceable to, a "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7)(A).

4. Based upon the facts and circumstances herein set forth, Plaintiff prays: (1) that process issue for an arrest warrant *in rem* for the subject property; (2) that notice be given to all parties to appear and show cause why forfeiture should not be decreed; (3) that this Court enter a judgment of forfeiture to the United States; and (4) that this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

5. This complaint is verified by the attached Verification of Drug Enforcement Administration ("DEA") Task Force Officer Ronald Brunzie ("TFO Brunzie"), which is fully incorporated herein.

**The Defendant *In Rem***

6. The Defendant *in rem* consists of the following property:

- $31,200 (thirty-one thousand two hundred dollars) in United States currency.

(Hereinafter, the "subject property").

7. The subject property was seized on September 18, 2018, by the DEA Chicago Field Division Enforcement/Interdiction Group 24 Task Force ("Group 24") operating out of Midway International Airport in Chicago, Illinois ("Midway"), to which TFO Brunzie is assigned.

8. The subject property is currently in the custody of the United States Marshals Service.

**Jurisdictional Statement**

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 because this action is commenced by the United States of America, and pursuant to 28 U.S.C. § 1355(a) because this is an action for forfeiture.

10. This Court has *in rem* jurisdiction over the subject property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395(a) (via 28 U.S.C. § 1355(b)(1)(B)) because the subject property is located in this district.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395 (via 28 U.S.C. § 1355(b)(1)(B)) because the subject property is located in this district.

**Basis for Forfeiture**

12. The subject property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it: (1) was "furnished or intended to be furnished" in exchange for a controlled substance or listed chemical in violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq*. (the "Controlled Substances Act"), (2) represents "proceeds traceable" thereto, or (3) was "used or intended to be used to facilitate" a violation thereof. *See* 21 U.S.C. § 881(a)(6).

13. The subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, "dealing in a controlled substance" under 18 U.S.C. § 1961(1)(A) and "interstate and foreign travel or transportation in aid of racketeering enterprises" under 18 U.S.C. § 1952 – "specified unlawful activate[ies]" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

14. The subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from "proceeds traceable" to "dealing in a controlled substance" under 18 U.S.C. § 1961(1)(A) and "interstate and foreign travel or transportation in aid of racketeering

enterprises" under 18 U.S.C. § 1952 – "specified unlawful activit[ies]" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

**Summary of Facts**

15. On September 18, 2018, members of DEA Group 24 conducted a consensual interview and search at Midway, which led to the discovery and seizure of the subject property from Sanobia Crocette ("Crocette"), who was traveling on a one-way trip ticket via Southwest Airlines® flights 3255/3406 from Birmingham, Alabama to San Francisco, California with a connecting flight in Chicago, Illinois.

16. A police canine certified by the State of Illinois demonstrated as a positive alert on the subject property, indicating the presence of one of five odors he is trained to detect.

17. Based upon the experience of DEA Group 24 officers, including TFO Brunzie, and the totality of the circumstances further described below, the subject property was seized for forfeiture.

**Facts**

I. Airport Interdiction and Discovery of the Subject Property

A. Overview of DEA Group 24 at Midway

18. This Complaint describes an investigation conducted by members of DEA Group 24 at Midway, to which TFO Brunzie is a member.

19. The primary responsibility of Group 24 is to investigate crimes involving the use of public train stations, commercial airlines, and shipping companies to transport illegal drugs and drug proceeds.

20. Based upon the experience of Group 24 investigators and in similar investigations across the United States, it is common knowledge that cities in the mid-west and east coast are demand

locations for illicit drugs.

21. States such as Arizona, California, and Colorado are considered source locations due to their close proximity to the border of Mexico and established drug transportation routes.

22. Person(s) involved in the illegal drug trade, often hire couriers to transport drugs and or proceeds from the sale of drugs by utilizing public train stations, commercial airlines, and shipping companies.

23. In an effort to identify and disrupt potential drug and/or money couriers related to drug organizations and criminal syndicates, investigators utilize a variety of resources, including confidential informants, suspicious travel itineraries, other law enforcement agencies, and prior knowledge of criminal activity or intelligence.

24. Factors that constitute suspicious travel itineraries include ticket purchase at the counter immediately prior to departure or short notice reservations for one-way travel, sometimes paid in cash.

25. In addition, Group 24 investigators know that it is common for couriers to utilize a third-party credit card to purchase tickets and to provide inaccurate or not in-service telephone numbers to airline and other transit companies.

26. Couriers often travel with minimal luggage and routinely attempt to board at the last possible moment.

27. Drug and/or money couriers utilize these techniques in an attempt to conceal their identities from law enforcement and minimize their exposure to commercial airlines and passenger railroad services.

    B. Travel Itinerary and Suspicious Behavior of Southwest Airlines® Passenger Crocette

28. On September 18, 2018, law enforcement officers assigned to Group 24, were alerted to the suspicious travel itinerary of Southwest Airlines® passenger Crocette.

29. Crocette was traveling on a one-way ticket via Southwest Airlines® flight numbers 3255/3406 from Birmingham, Alabama to San Francisco, California with a connecting flight in Chicago, Illinois.

30. The tickets were purchased on September 18, 2018, less than 12 hours before the scheduled departure time.

31. Based upon the training and experience of Group 24 investigators, illegal drug couriers often purchase airline tickets one day or so prior to the scheduled departure.

32. Group 24 investigators also know San Francisco, California, and the central California region in particular, to be a known source area for illegal drug trafficking.

33. Group 24 investigators also know that those who transport illegal drugs, or the proceeds of illegal drug trafficking, often keep them on their person or in accompanying bags or suitcases.

34. Group 24 investigators sought to conduct a consensual interview of Crocette prior to her boarding Southwest Airlines® flight 3406.

35. Agents obtained a photograph of Crocette prior to the interview.

36. At approximately 1:30 p.m., Group 24 investigators established surveillance near gate B-5 at Midway, the gate for the outbound Southwest Airlines® flight in question, in an attempt to interview Crocette.

37. Investigators were dressed in civilian clothing with no weapons, radios, or other law enforcement paraphernalia visible.

38. Shortly thereafter, TFO Brunzie requested that Southwest Airlines® personnel page passenger Crocette.

39. A woman who matched the description of Crocette approached the counter.

C. Initial Interview of Crocette

40. TFO Brunzie approached Crocette, identified himself as a law enforcement officer by displaying his credentials and badge, and asked to speak with her.

41. TFO Brunzie informed Crocette that she was not under arrest and that she was not in any trouble.

42. Crocette stated that she understood and agreed to speak with TFO Brunzie.

43. When TFO Brunzie requested to see Crocette's boarding pass and identification, Crocette produced a state of California driver's license and a boarding pass.

44. TFO Brunzie noted the information contained on the documents and immediately returned them to Crocette.

45. When asked where she was traveling, Crocette stated that she was going to San Francisco.

46. When asked for the purpose of her travel, Crocette stated she was returning from Alabama where she had been visiting a friend for a few days.

47. When TFO Brunzie asked Crocette if she had any carry-on luggage, she replied "[y]es" and presented a brown and white duffel bag, her purse and a pink blanket.

48. When TFO Brunzie asked Crocette if she had any checked luggage, she replied "[y]es."

49. Crocette further stated that she had packed her own luggage.

50. When TFO Brunzie asked Crocette if she was carrying any electronic devices, liquids, weapons or illegal drugs, she answered "[n]o" to all other than that she had a cellular phone.

51. When TFO Brunzie asked Crocette if she was carrying any large amounts of currency, she replied "[n]o, but" and then paused.

52. When TFO Brunzie asked Crocette how much money she had she did not answer.

53. When TFO Brunzie asked Crocette if she was carrying less than $10,000, Crocette replied, "[y]es, maybe $9,000."

54. TFO Brunzie asked Crocette where the currency was located and she stated that in was located in her carry-on bag.

   D. Consensual Search and Discovery of the Subject Property

55. In order to verify her statements, TFO Brunzie asked Crocette for permission to search her carry-one with was a medium size PINK® brown-and-white design duffel bag and her checked luggage, which was a large silver hard exterior suitcase.

56. After making a phone call to her mother, who she said was an attorney, Crocette gave oral consent to search her carry-on and checked luggage.

57. TFO Brunzie then searched Crocette's medium size PINK® brown-and-white duffel bag and discovered the subject property concealed within the clothing.

58. The subject property consisted of 312 one hundred-dollar bills.

59. When TFO Brunzie asked about the U.S. currency, Crocette stated that the amount might be $15,000 but was no more than $20,000 and that a male friend in Alabama had given it to her for services she performed.

60. Crocette refused to provide the name or contact information of her male friend in Alabama.

61. When TFO Brunzie asked Crocette what she did for a living, Crocette said that she was a dancer.

62. TFO Brunzie advised Crocette that agents were going to detain the subject property for further investigation, including an examination by a canine.

63. TFO Brunzie informed Crocette that she could accompany agents to the DEA office located within O'Hare if she wanted a receipt or one could be mailed to her if or she didn't want to miss her flight.

64. Crocette agreed to accompany agents to the DEA office.

65. As TFO Brunzie and Crocette were walking to the DEA office, Special Agent Luis Mendez retrieved Crocette's large silver suitcase from the baggage area.

66. After receiving oral consent from Crocette to search her large silver suitcase, investigators located four new pairs of men's jeans and a t-shirt.

67. According to Crocette, the jeans belonged to her.

68. When TFO Brunzie asked Crocette if she had filed taxes in 2017, Crocette replied that since she is a dancer and is often paid in cash.

69. Crocette further informed that she never files her taxes.

70. Crocette also stated that, although she did maintain a checking and savings account, neither currently have a balance of funds.

E. Canine Examination of the Subject Property

71. Illinois State Trooper Anthony Muzzullo ("Tpr. Muzzillo") utilized his certified narcotics detection canine, Maverick, to examine the subject property.

72. Maverick is currently three years old and Tpr. Muzzillo is Mavericks's first handler.

73. Maverick is certified with by the State of Illinois (most recently on December 4, 2018).

74. Maverick was last certified prior to this investigation by the State of Illinois on June 5th 2018.

75. Maverick is trained and certified to detect five odors: (1) marijuana, (2) cocaine, (3) heroin, (4) ecstasy, and (5) methamphetamine.

76. If at any time during a search Maverick smells one of the five odors he is trained to detect, Maverick will alert with an active/passive alert at the area where he smells the odor.

77. Maverick's search/sniff of the subject property was conducted on September 18, 2018 at the Midway hourly parking garage area located 55th and Kilpatrick, Chicago, Illinois (the "Midway garage").

78. At the time of the search/sniff at the Midway garage, there were vehicles, concrete pillars, and a total of three bags.

79. Tpr. Muzzillo brought Maverick into the Midway garage and gave him the command to search/sniff.

80. As Maverick searched the Midway garage and neared the hidden bag that contained the subject property, Tpr. Muzzillo observed Maverick sniff the air, focus his stare, and sit.

81. Tpr. Muzzillo recognized this behavior as a positive alert indicating Maverick smelled one of the five orders he is trained to detect.

82. Tpr. Muzzillo did not recognize this behavior from Maverick as indicating an interest in any other items, persons, or vehicles in the area.

    F.   Seizure of the Subject Property for Forfeiture

83. At this time, Group 24 investigators seized the subject property for forfeiture per DEA guidelines governing asset forfeiture.

84. Crocette left with no further incident.

II. Additional Investigative Details

    A.   Travel History of Crocette

85. The following airline ticket information was provided by Southwest Airlines®, demonstrating suspicious a pattern of last-minute, one-way travel over a condensed period of

time, indicative of a courier involved in the illegal drug trade:

    1)  A one-way ticket was purchased May 21, 2018, for travel by Crocette from Tampa, Florida to Dallas, Texas on flight 1787. Crocette boarded flight 1787 and departed May 21, 2018. Crocette checked one piece of luggage on flight 251. Once she got to Dallas she connected on flight 651 to San Francisco, California.

    2)  A one-way ticket was purchased June 19, 2018, for travel by Crocette from Birmingham, Alabama to Las Vegas, Nevada on flight 2091. Crocette boarded flight 2091 and departed June 20, 2018. Crocette checked one piece of luggage on flight 2091. Once she got to Las Vegas she connected on flight 257 to San Francisco, California.

    3)  A one-way ticket was purchased June 28, 2018, for travel by Crocette from Birmingham, Alabama to Chicago, Illinois on flight 2100. Crocette boarded flight 2100 and departed June 29, 2018. Crocette checked one piece of luggage on flight 2100. Once she got to Chicago she connected on flight 1286 to San Francisco, California.

    4)  A one-way ticket was purchased July 9, 2018, for travel by Crocette from Birmingham, Alabama to Las Vegas, Nevada on flight 2091. Crocette boarded flight 2091 and departed July 10, 2018. Crocette checked one piece of luggage on flight 2091. Once she got to Las Vegas she connected on flight 257 to San Francisco, California.

    5)  A one-way ticket was purchased July 21, 2018, for travel by Crocette from Birmingham, Alabama to Las Vegas, Nevada on flight 1426. Crocette boarded flight 1426 and departed July 22, 2018. Crocette checked one piece of luggage on flight 1426. Once she got to Las Vegas she connected on flight 1158 to San Francisco, California.

    6)  A one-way ticket was purchased August 2, 2018, for travel by Crocette from Birmingham, Alabama to Las Vegas, Nevada on flight 2091. Crocette boarded flight 2091 and

departed August 3, 2018. Crocette checked one piece of luggage on flight 2091. Once she got to Las Vegas she connected on flight 257 to San Francisco, California.

      7)  A one-way ticket was purchased August 23, 2018, for travel by Crocette from Birmingham, Alabama to Chicago, Illinois on flight 1490. Crocette boarded flight 2100 and departed August 24, 2018. Crocette checked one piece of luggage on flight 1490. Once she got to Chicago she connected on flight 2392 to San Francisco, California.

      8)  A one-way ticket was purchased September 4, 2018, for travel by Crocette from Birmingham, Alabama to Houston, Texas on flight 3035. Crocette boarded flight 3035 and departed September 5, 2018. Crocette checked one piece of luggage on flight 3035. Once she got to Houston she connected on flight 1741 to San Oakland, California.

      9)  A one-way ticket was purchased September 17, 2018, for travel by Crocette from Birmingham, Alabama to Chicago, Illinois on flight 1490. Crocette boarded flight 1490 and departed September 18, 2018, Crocette checked one piece of luggage on flight 1490.

III.   Administrative Forfeiture Proceedings

86. DEA initiated administrative proceedings against the subject property by mailing a Notice Letter and Notice of Seizure to all potential interest holders by certified mail.

87. In response to this notice, Crocette filed an online claim to the subject property with DEA on November 8, 2018.

88. On November 14, 2018, DEA referred this matter to the United States Attorney's Office in Chicago to initiate judicial forfeiture proceedings.

**First Cause of Action**

89. Plaintiff repeats and realleges the averments in paragraphs one through 111 as though fully set forth herein.

90. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it: (1) was "furnished or intended to be furnished" in exchange for a controlled substance or listed chemical in violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq*. (the "Controlled Substances Act"), (2) represents "proceeds traceable" thereto, or (3) was "used or intended to be used to facilitate" a violation thereof. *See* 21 U.S.C. § 881(a)(6).

91. Pursuant to 21 U.S.C. § 881(a)(6), "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of [21 U.S.C. §§ 801-904], all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [thereof]" are subject to forfeiture to the United States. *Id*.

**Second Cause of Action**

92. Plaintiff repeats and realleges the averments in paragraphs one through 111 as though fully set forth herein.

93. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, "dealing in a controlled substance" a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

94. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of 1956, 1957 or 1960 of [Title 18], or any property traceable to such property," is subject to forfeiture to the United States.

95. Pursuant to 18 U.S.C. § 1956(a)(3):

> Whoever, with the intent—
> (A) to promote the carrying on of specified unlawful activity;
> (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or
> (C) to avoid a transaction reporting requirement under State or Federal law,
> conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both…

96. The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

97. The list of offenses under § 1961(1)(A) are further defined as "racketeering activity," and include "any act or threat involving . . . dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year[.]" *See* 18 U.S.C. § 1961(1)(A).

**Third Cause of Action**

98. Plaintiff repeats and realleges the averments in paragraphs one through 111 as though fully set forth herein.

99. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, interstate and foreign travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952, a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

100. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of 1956, 1957 or 1960 of [Title 18], or any property traceable to such

property," is subject to forfeiture to the United States.

101. Pursuant to 18 U.S.C. § 1956(a)(3):

> Whoever, with the intent—
> (A) to promote the carrying on of specified unlawful activity;
> (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or
> (C) to avoid a transaction reporting requirement under State or Federal law,
> conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both.

102. The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

103. The list of offenses under § 1961(1)(A) are further defined as "racketeering activity," and include "any act which is indictable under . . . section 1952[.]" *See* 18 U.S.C. § 1961(1)(A).

104. Section 1952(a) describes the following as an indictable act:

> Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
> (1) distribute the proceeds of any unlawful activity; or
> (2) commit any crime of violence to further any unlawful activity; or
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity[.]

105. Section 1952(b) further describes "unlawful activity" as, "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)[.]". *See* 18 U.S.C. § 1952(b).

**Fourth Cause of Action**

106. Plaintiff repeats and realleges the averments in paragraphs one through 111 as though fully set forth herein.

107. For the reasons set forth above, the subject property is subject to forfeiture pursuant to

18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to "dealing in a controlled substance," a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

108. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c))" is subject to forfeiture to the United States. *See* 18 U.S.C. § 981(a)(1)(C)(2018).

109. The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

110. The list of offenses under section 1961(1)(A) are further defined as "racketeering activity," and include "any act or threat involving . . . dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year[.]" *See* 18 U.S.C. § 1961(1)(A).

**Fifth Cause of Action**

111. Plaintiff repeats and realleges the averments in paragraphs one through 111 as though fully set forth herein.

112. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952 ([i]nterstate and foreign travel or transportation in aid of racketeering enterprises), a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

113. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which

constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c))" is subject to forfeiture to the United States. *See* 18 U.S.C. § 981(a)(1)(C)(2018).

114. The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

115. The list of offenses under section 1961(1)(A) are further defined as "racketeering activity," and include "any act which is indictable under . . . section 1952[.]" *See* 18 U.S.C. § 1961(1)(A).

116. Section 1952(a) describes the following as an indictable act:

> Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
>   (1) distribute the proceeds of any unlawful activity; or
>   (2) commit any crime of violence to further any unlawful activity; or
>   (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity[.]

117. Section 1952(b) further describes "unlawful activity" as, "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)[.]" *See* 18 U.S.C. § 1952(b).

**Prayer for Relief**

WHEREFORE, based upon the aforementioned facts and circumstances, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. Supp. G(3)(b), respectfully, prays:

1) That process issue for an arrest warrant *in rem* for the subject property, which Plaintiff will execute in accordance with 28 U.S.C. § 1355(d) and Fed. R. Civ. P. Supp. G(3)(c);

2) That due notice be given to all parties to appear and show cause why forfeiture of the subject property to the United States in accordance with the claims herein set forth should not be decreed;

3) That this Court enter a judgment of forfeiture for the subject property to the United States; and

4) That this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

DATED this 6th day of February 2019.

JOHN R. LAUSCH, JR.
United States Attorney
For the Northern District of Illinois

By: *Jeffrey R. Borup*
JEFFREY R. BORUP
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
Desk: (312) 697-4087
Email: jeffrey.borup@usdoj.gov

Attorneys for Plaintiff
United States of America

State of Illinois )
) ss.
County of Cook )
)

**VERIFICATION IN SUPPORT
OF COMPLAINT FOR FORFEITURE *IN REM***

I, Ronald M. Brunzie, declare under penalty of perjury the following:

1. I am a Task Force Officer with the Drug Enforcement Administration ("DEA") and have been so employed since May 2014.

2. My duties and responsibilities as a Task Force Agent with DEA involve investigation of alleged violations of the Controlled Substances Act, Title 21 of the United States Code.

3. I have read the foregoing complaint in this matter and the facts alleged are true and correct to the best of my knowledge and belief.

4. This statement is based upon my own personal knowledge as well as information I have received from other agents, persons, and documents; it does not include each and every fact known to me concerning this investigation, but is submitted for the limited purpose of establishing a basis to believe the property identified is subject to forfeiture.

Executed on this 6th of February 2019, in Chicago, Illinois.

RONALD M. BRUNZIE
Task Force Officer
Drug Enforcement Administration